UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**RAYMOND J. WOOD,**          CASE NO.: 5:09-cv-340

    **Plaintiff,**

v.

**DALTON UPCHURCH, individually,
JOE NUGENT, in his official capacity as
SHERIFF, GULF COUNTY, FLORIDA,
BOBBY PLAIR, individually,
RICHARD BURKETT, individually, and
PAUL BEASLEY, individually**

    **Defendants,**
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR MENTAL EXAMINATION**

Plaintiff, RAYMOND WOOD, through his undersigned counsel, hereby files this his Response to Defendant's Motion for Mental Examination and states:

**I.  INTRODUCTION**

First, there has been no "conferral" as required under N.D. Local Rule 7.1 regarding the mental examination of the Plaintiff.  Defendant emailed the undersigned and asked if she would consent to a mental examination of the Plaintiff.  The undersigned advised that she would.  The Plaintiff then was researching the expert and advised Defendant's counsel that she did not

consent to the expert. There was an email exchange between the parties on April 13, 2010 about the expert's credential and tests that would be performed during the examination. At 4:33 p.m. on April 13, 2010, the undersigned wrote to Defendant's counsel attempting to obtain additional information about the exam and expert, as follows:

> "I don't think he has the credentials. He has capital murder experience and I have learned that he is just in this expert stuff for the money. I also don't have the names of tests, etc. I object to testing like the MMPI. What would your expert do? How long would the examination last? Would you allow a court reporter?"

No response was received to this email. Instead, at 4:57 p.m. that same day, April 13, 2010, twenty four (24) minutes after the undersigned asked about testing by the expert, Defendant's counsel filed the instant Motion.

No response has ever been received to this email and while Plaintiff does not object to a mental examination, he objects to the examiner and he needs additional information about the testing. He also requests that his counsel, a videographer or court reporter be permitted to be present for the examination.

## II. SCOPE AND LOCATION OF THE PHYSICAL EXAMINATION

Plaintiff objects to the mental examination because it does not adequately describe the manner and scope of the examination. The only description of the examination offered by the Defendant in its Motion is that "Dr. Larson's mental examination would consist of a personal clinical interview and would require Plaintiff to participate in some standard psychological testing." [Defendant's Motion, pg. 6]. Plaintiff would also be required to travel to Pensacola which would be a substantial hardship on Plaintiff.

### A.    Scope of the Examination

With respect to testing, Plaintiff opposes being required to attend a mental examination in

which the tests have not been disclosed. He opposes undergoing a series of invasive, unreliable and invalid examinations that may be inadmissible under the Federal Rules of Evidence 402, 403, 404, Kumho Tire v. Carmichael, 526 U.S. 137 (1999), and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 549 (1993). In Kumho Tire, the U.S. Supreme Court held that Daubert applies not just to "scientific testimony" but to all expert testimony. Kumho, 526 U.S. at 137. Under Daubert, the proponent of the evidence must show that (1) the exam theory or technique is based on scientific knowledge; (2) the exam theory has been tested, has a low rate of error, and is based on generally accepted scientific propositions; (3) the exam will help a jury in determining a material issue of fact; and (4) the exam is "relevant" and the expert's testimony will be sufficiently tied to the facts of the case so that it will aid the jury in resolving a factual dispute. Daubert, 509 U.S. at 592-93.

The Plaintiff cannot determine if the tests that the expert proposes to give to the Plaintiff meet the Daubert requirements because no tests have been identified. See Usher v. Lakewood Engineering & Mfg. Co., 158 F.R.D. 411 (N.D. Ill. 1994)(denial of psychological testing appropriate where there was a question of the adequacy of correlation factors and validity factors of all psychological tests in question.). Plaintiff knows nothing about this examination as the Defendants have failed to specify the "time, place, manner, conditions, and scope of the examination" as required by Rule 35. Defendants have done nothing more in their moving papers than identify a psychologist, his location, and state that the examination will consist of a personal clinical interview and some "standard psychological testing." There are no limitations proposed upon the examination. This is plainly insufficient under Rule 35. As discussed below, Plaintiff is entitled to have other limitations imposed on any mental examination that may be

ordered.

### (1) Plaintiff's Counsel or a Court Reporter Should be Present at the Examination and the Examination Recorded by Videotape

Courts have recognized that Rule 35 examinations are more in the nature of an adversarial proceeding than an impartial medical examination. See, e.g., Sidari v. Orleans County, 174 F.R.D. 275, 291 (W.D.N.Y. 1996) (allowing audio recorder at mental examination of party); Vreeland v. Ethan Allen, Inc., 151 F.R.D. 552 (S.D.N.Y. 1993) (holding that the plaintiff's counsel could be present during Rule 35 examination by the defendant's expert); Di Bari v. Incaica Cia Armadora, S.A., 126 F.R.D. 12, 14 (E.D.N.Y. 1989)(allowing a stenographer at the plaintiff's psychiatric examination); Zabkowicz v. West Bend Company, 585 F.Supp. 635 (E.D. Wis. 1984) (holding that the plaintiff was entitled to have a recording device or counsel present while the defendant's psychiatrist conducted a mental examination); B.D. v. Carley, 307 N.J. Super. 259, 704 A.2d 979, 981 (App. Div. 1998) (allowing recording of examination to test the accuracy of the examiner's notes or recollections, and preserve the atmosphere of the examination); Jacob v. Chaplin, 639 N.E.2d 1010, 1013 (Ind. 1994) (allowing parties to record examination in the absence of some overriding reason to prohibit the recording); Langfeldt-Haaland v. Saupe Enterprises, Inc., 768 P.2d 1144, 1147 (Alaska 1989) (holding that party's attorney could attend physical examinations of a party, and that recording should be allowed);

### (2) Defendant Should Disclose any Written Documentation that Its Expert Intends to Submit to Plaintiff in Advance of the Examination

Defendants should be required to disclose any psychological tests or other documentation that their expert intends to submit to Plaintiff. Any tests or written documentation to be administered to Plaintiff should be specifically identified in a Rule 35 order, and provided in

advance to Plaintiff's counsel. The courts have held that in light of the potential for misuse of such tests and documentation, the party to be examined has the right to learn about, review, and challenge any such tests or documentation. See, e.g., Thomas v. Chater, 104 F.3d 356 (2d Cir. 1996)(holding that reliance upon the MMPI-II (Minnesota Multiphasic Personality Inventory) as diagnostic tool was improper); Colvard v. Chater, 59 F.3d 165 (4th Cir. 1995) (same); Hirschheimer v. Associated Metals & Minerals Corp., 1995 WL 736901 (S.D.N.Y. 1995) (ordering that tests to be given during examination should be identified); Usher v. Lakewood Engineering & Manufacturing Co., 158 F.R.D. 411 (N.D. Ill. 1994) (denying the defendant's request for certain psychological tests as being unreliable).[1]

(3) **The Court Should Order Reasonable Limits Upon the Scope of the Questioning of Plaintiff at the Examination.**

The Court should order reasonable limitations upon the scope of the examination. It appears that Defendants propose no limits upon the scope of the questioning so long as Plaintiff is seeking any type of emotional distress damages. This position would open the Plaintiff up to intrusive questioning about matters entirely unrelated to his arrests in this case, including questions about his sex life, his marriage, his relationship with his parents, and a range of

---

[1]   There are a number of objections that Plaintiff can raise to various tests that may be proposed and he reserves the right to make these objections when the tests are actually revealed. For example, Plaintiff would object to the MMPI being administered in this case. In Soroka v. Dayton Hudson Corp., 6 IER Cases (BNA) 1491, 1492-93 (Cal. Ct. App., 1st Dist. 1991), the MMPI-II was refused in an employment case on the ground that, among other things, defendant would not be entitled to answers to questions on the MMPI-II through normal discovery procedures and therefore should not be entitled to obtain this irrelevant and potentially prejudicial information through the use of an MMPI test. The questions were shown not to be "job related" and thus violated the federal right to privacy standard, under which employees may not be compelled to submit to a violation of their right to privacy unless a clear, direct nexus exists between the nature of the employee's duty and nature of the violation. Id. at 1497.

irrelevant, private, and sensitive, matters. Defendants' counsel has not discussed any limitations upon the questioning, or to even identify the subjects about which their psychologist proposes to examine Plaintiff.

      **B.**    **Location of the Examination**

Defendants have suggested that an examination in Pensacola would not be overly burdensome for the Plaintiff. Nothing could be further from the truth.

In 1987, Raymond Wood had to have his right arm amputated after an industrial accident. Mr. Wood does not have a car. He is not employed and has no meaningful income. He cannot get to Pensacola for the examination, even if the Defendant paid for his gas.

Defendant states in its Motion that Plaintiff has previously traveled to Panama City to attend depositions. This is apparently tantamount to plaintiff driving an additional two hours or more on the highway to Pensacola. There is a big difference between Plaintiff driving on the back roads to Panama City versus driving with one arm on I-10 to Pensacola, presuming that he is able to borrow someone's car to get there. He has no transportation.

Although the prevailing view is that mental examinations should take place in the district where the action is pending, Plaintiff B v. Francis, 2009 WL 1360853, *1 (N.D. Fla. 2009), the examination should be where the trial will be held to allow for the examining expert to be available conveniently for testimony. See Baird v. Quality Foods, Inc., 47 F.R.D. 212 (E.D. La. 1969). Moreover, there are many psychologists in the Panama City area of similar practice in the area in which Plaintiff resides and this action was filed. Motion to compel examinations have been denied when travel was required for distances that the Plaintiff would be required to travel in this case. See Stuart v. Burford, 42 F.R.D. 591, 592 (N.D. Okla. 1967)(court took notice that

over 40 doctors of similar practice were in the area where Plaintiff resided and the action was filed and denied a motion to compel an examination in a city over 118 miles away); Rainev v. Wal-Mart Stores, Inc., 139 F.R.D. 94 (W.D. La. 1991)(270 miles is too far when the defendant made no argument that there were not other physicians "similar in stature, training or quality" to those in the forum district); Pierce v. Broviq, 16 F.R.D. 569, 570 (S.D. N.Y. 1954).

### III. CONCLUSION

If a mental examination is ordered, Plaintiff respectfully requests that the order be specific covering the following:

1. That the examination be within a 50 mile radius of the Plaintiff's residence;

2. That all tests and other examination techniques be disclosed to Plaintiff's counsel at least ten (10) days prior to the examination so that objections can be made, if any;

3. That a limitation of three hours be placed on the examination;

4. That the alternative examiner be properly credentialed in performing the type of evaluation sought by the Defendants;

5. That the mental examination be limited to examining the Plaintiff's current and prior mental state from the relevant time period of activities giving rise to this lawsuit through the present;

6. That the examination be limited to the nature and circumstances of Plaintiff's mental impairments, emotional distress based on the acts and omissions of the Defendants, and to Plaintiff's current mental state;

7.      That provision be made for the report and information gathered by the examiner to be maintained as "confidential" for use solely in the pending litigation and to be viewed by attorneys' eyes only;

8.      That Plaintiff's counsel or a court reporter and a videographer be permitted to be present during the examination; and

9.      That the examiner's report, test scores, raw data and all notes be provided to Plaintiff's counsel and that Plaintiff's counsel will have an opportunity to depose Defendant's expert.  See Tracey P. v. Sarasota County, 2006 WL 1678908 (M.D. Fla. 2006)(detailing restrictions on mental examination).

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
310 East Bradford Road
Tallahassee, Florida  32303
Telephone:   (850) 383-4800
Facsimile:    (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been provided by CM/ECF to all counsel of record this 20th day of April, 2010

/s/ Marie A. Mattox
Marie A. Mattox